Filed 3/25/24  Tesoro Refining & Marketing Co. v. Rickley CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TESORO REFINING & MARKETING COMPANY, LLC et  al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>    v.<br><br>REBECCA RICKLEY et al.,<br><br>    Defendants, Cross-complainants and Appellants;<br><br>FIEDLER GROUP, INC.,<br><br>    Cross-defendant and Respondent. | B317441, B320358<br><br>(Los Angeles County Super. Ct. No. BC656002) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Law Offices of Natasha Roit and Natasha Roit for Defendants, Cross-complainants and Appellants.

Buchalter, Matthew S. Covington, Efrat M. Cogan and George J. Stephan for Plaintiffs, Cross-defendants and Respondents Tesoro Refining & Marketing, LLC and Thrifty Oil Co.

Collins + Collins, Brian K. Steward and David C. Moore for Cross-defendant and Respondent Fiedler Group.

_____

Appellants, defendants and cross-complainants Natasha Roit and Rebecca Rickley (collectively, Defendants), appeal from the judgment entered in favor respondents, plaintiffs and cross-defendants Tesoro Refining & Marketing Company, LLC (Tesoro) and Thrifty Oil Co. (Thrifty) (collectively, Plaintiffs), and respondent and cross-defendant Fiedler Group, Inc. (Fiedler)[1] in this action involving a sewer easement and a sewage spill on Defendants' property. In a bifurcated trial, the trial court granted Plaintiffs' motion for summary adjudication of their claim for a recorded easement, and following a court trial, granted Plaintiffs an equitable easement. A jury then found Defendants were negligent and awarded Tesoro $423,375 in damages.

Defendants contend the trial court erred by summarily adjudicating the recorded easement claim and by granting Plaintiffs an equitable easement. Defendants further contend the jury verdict should be reversed because the trial court made erroneous evidentiary rulings, misinstructed the jury, and improperly rejected Defendants' claims of attorney misconduct.

Finding no legal error or abuse of discretion, we affirm the judgment.

## BACKGROUND

**The properties**

Thrifty owns a gas station at the corner of Pacific Coast Highway (PCH) and Topanga Canyon Boulevard (the gas station property). Tesoro leased the gas station property from Thrifty during the time period relevant to this action.

_____

[1] Tesoro, Thrifty, and Fiedler are referred to collectively as Respondents.

2

Defendants own 3929 Malibu Vista Drive (the Malibu Vista property), a residential property located uphill from the gas station property.

**The easement**

In 1967, Defendants' predecessors, the Mortons, granted Gulf Oil Company (Thrifty's predecessor) and its successors an easement across the Malibu Vista property to "construct, maintain, operate and use sanitary sewers and appurtenant structures" together with the "right to enter upon and to pass and repass over and along" the easement "whenever and wherever necessary for the purposes above set forth." The easement grant further states that "Grantee agrees . . . to quitclaim said easement within one year from such time that it is possible for Grantee to connect to any sewer line extending along Pacific Coast Highway or Topanga Canyon Boulevard which serves its service station located at the intersection thereof." The easement was recorded in May 1967.

At the time of the easement grant, a Los Angeles County sewer station was located on PCH at Coastline Drive (the Coastline station) approximately three quarters of a mile away from the gas station property. In 1967, the County and Gulf signed a recorded waiver and agreement in which the County permitted Gulf to connect its sewer line from the gas station property to a County sewer line on Malibu Vista Drive (the Malibu Vista sewer), and Gulf agreed not to protest the inclusion of its property "in a Special Assessment District for the construction of any Sanitary Sewer that will serve said property and district, and to pay the proportionate cost of such assessment." In the late 1960's, Gulf installed a sewer line for the gas station property, connected it to the public Malibu Vista sewer, and used its sewer line to service the gas station property.

Thrifty purchased the gas station property in the 1980's. Thrifty leased the gas station property to tenants starting in 1997. Thrifty and/or its tenants paid charges to the County for the sewer connection to the Malibu Vista sewer adjacent to the Malibu Vista property and

3

used the sewer line servicing the gas station property continuously from 1982 to 1999.

Defendants purchased the Malibu Vista property in 1997. Before purchasing the property, Rickley reviewed a preliminary title report that described an "easement for sanitary sewers." When she reviewed the preliminary title report, Rickley understood there was an easement for sanitary sewers across the Malibu Vista property.

**Defendants remove part of the sewer line and a sewage spill occurs**

In 1999, the gas station was closed temporarily while Tesoro undertook renovations on the station and work to stabilize the adjacent hillside. Tesoro engaged Fiedler for the hillside work and to obtain permits for the gas station renovations. Permitting and construction work for the renovations continued until 2016 and cost approximately $11 million.

While the gas station renovations were ongoing, Defendants sued their neighbor, Marvin Goodfriend, claiming he had dumped construction debris along the boundary between their properties (the *Goodfriend* action). Respondents were not parties to that litigation. The court in the *Goodfriend* action appointed a receiver to oversee removal of debris on Goodfriend's property. Defendants supervised the removal of debris on their own property in 2012. During the Goodfriend debris removal on Defendants' property, an approximately 20-foot section of the sewer pipe in the easement was removed and not replaced. Neither earth movement nor rotting of the pipe was the cause for removing this portion of the sewer pipe.

In 2011 to 2012, the County sewer line located at PCH and Coastline Drive was changed from a station pump system to a gravity sewer.[2] The gravity sewer line remains in substantially the same location at the corner of PCH and Coastline Drive as it was in the early 1960's.

---

[2] A gravity sewer main is a type of sewer in which gravity causes the sewage to drain, with no need for a pump.

In 2016, shortly after the gas station reopened for business, Defendants reported a sewage spill. Ron Rogers of Tesoro went to investigate the spill and was met by Defendants, who informed him that a portion of the sewer pipe had been removed during the Goodfriend remediation. Rogers confirmed that a portion of the sewer pipe was missing. Defendants would not allow Tesoro to repair the sewer line without a court order. Unable to repair the leak, Tesoro turned off the sewer pump servicing the line and hired a contractor, Top Notch Plumbing (Top Notch), to truck sewage out of the gas station property at a cost of more than $120,000 per year.

In June 2018, the County issued a notice of violation to Thrifty for trucking sewage out of the gas station property. The notice required Thrifty to reconnect the sewer line from the gas station property to the Malibu Vista sewer. Defendants continued to deny Plaintiffs access to the Malibu Vista Property to repair the sewer line and to allow reconnection to the Malibu Vista sewer.

## PROCEDURAL HISTORY

Plaintiffs filed this action against Defendants for quiet title and negligence. Defendants answered and cross-complained against Plaintiffs, Fiedler, and others[3] for trespass, nuisance, and negligence arising out of the sewage spill. Against Thrifty and Tesoro only, Defendants also claimed the recorded easement violated covenants, conditions, and restrictions affecting their property. They sought to cancel the easement and claimed damages for slander of title.

**Preliminary injunction**

While the lawsuit was pending, Defendants cut additional portions of the sewer pipe and cemented over part of the sewer line. Respondents obtained a preliminary injunction preventing Defendants from cutting, damaging, or cementing over more of the sewer line, and this court affirmed issuance of the preliminary injunction. (*Tesoro*

---

[3] Defendants cross-complained against Gulf, ARCO (Thrifty's first tenant), and RD Builders, none of whom are parties to these appeals.

*Refining & Marketing, LLC v. Rickley* (Sept. 6, 2019, B290903 [nonpub. opn.].)

**Summary judgment motions**

The parties filed cross motions for summary adjudication or summary judgment. The trial court denied Defendants' motion, ruling they had not met their burden of production. The court also denied Defendants' motion for reconsideration.

The trial court granted Plaintiffs' motion for summary adjudication of the recorded easement claim and bifurcated the remaining claims for prescriptive easement, equitable easement, negligence and other tort claims, and damages. Defendants filed a motion for reconsideration, which the trial court denied.

**Trial on remaining claims**

A jury trial was held to decide the prescriptive easement claim, followed by a court trial on the equitable easement claim, and another separate jury trial on negligence and damages resulting from the sewage spill. The jury in the prescriptive easement trial returned a verdict in Defendants' favor. Plaintiffs did not appeal from that verdict.

During the trial on Plaintiffs' equitable easement claim, the trial court sustained evidentiary objections to the declaration of Defendants' expert, Quang Tran, and excluded that declaration in its entirety. After the trial concluded, the court issued a statement of decision in Plaintiffs' favor.

During the jury trial on the tort and damages claims, the trial court approved, by agreement of the parties, a jury instruction containing stipulated facts previously determined in the equitable easement trial. The jury returned a verdict in Tesoro's favor on its negligence claim[4] and awarded $423,375 in damages against Defendants. The jury entered a verdict in Respondents' favor on Defendants' negligence and other claims against them. The trial court

---

[4] During the trial, Thrifty dismissed without prejudice its negligence claim against Defendants.

denied Defendants' subsequent motions for a new trial and for judgment notwithstanding the verdict.

On December 9, 2021, the trial court granted Plaintiffs' motion for a permanent injunction prohibiting Defendants from, among other things, interfering with Plaintiffs' right to access, enter, pass and repass over and along the easement and adjacent areas of Defendants' property to inspect, locate, repair, or replace the sewer line in the easement. A final judgment was entered in Respondents' favor on April 5, 2022. This appeal followed.

## CONTENTIONS ON APPEAL

Defendants raise the following contentions on appeal:

**I.** Summary adjudication of the recorded easement claim must be reversed because the trial court misapplied the Marketable Record Title Act (Civ. Code, § 880.020 et seq.) (MRTA). The easement was extinguished because Plaintiffs failed to record a notice of intent to preserve the easement under the MRTA. The easement was also extinguished pursuant to the quitclaim provision of the easement grant because it was possible for Plaintiffs to connect to a sewer line on PCH. The trial court erroneously excluded the declaration of Defendants' expert, Tran. The trial court abused its discretion in denying Defendants' motion for reconsideration.

**II.** The trial court misapplied the law in granting Plaintiffs an equitable easement.

**III.** Defendants could not be sued in negligence absent an order from the court in the *Goodfriend* action.

**IV.** Cumulative errors, including evidentiary and instructional errors and attorney misconduct, require reversal of the jury verdict against Defendants.

## DISCUSSION

### I. Recorded easement

#### A. Standard of review

We apply a de novo standard of review to the trial court's summary adjudication of the recorded easement claim. In doing so, we view the evidence in the light most favorable to Defendants as the

7

nonmoving parties and resolve all doubts about the propriety of granting the motion in their favor. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) We consider all the evidence before the trial court except that to which objections were made and properly sustained. (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451–1452.) Although we independently review the trial court's ruling on Plaintiffs' motion, Defendants bear the burden of demonstrating that the ruling was erroneous. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 372.)

In exercising our independent review, we apply the standards applicable to summary judgment motions. A party moving for summary judgment has an initial burden of production to make a prima facie showing that there are no triable issues of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.) Once the moving party does so, the burden of production shifts to the opposing party to show the existence of material disputed facts. (*Aguilar*, at pp. 850–851.) The opposing party must make that showing with admissible evidence. (Code Civ. Proc., § 437c, subd. (d); *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 846.)

## B. No error in granting summary adjudication
### 1. The MRTA

The trial court did not err by concluding the easement was not extinguished because Plaintiffs did not record a notice of intent to preserve the easement under the MRTA. The MRTA applies only to abandoned easements, not all easements, and Defendants offered no evidence that the easement at issue was abandoned. (Civ. Code, §§ 887.040–887.070.)

The MRTA was enacted in 1982 "to simplify and facilitate real property title transactions in furtherance of public policy by enabling persons to rely on record title to the extent provided in this title, with respect to the property interests specified in this title, subject only to the limitations expressly provided in this title and notwithstanding any provision or implication to the contrary in any other statute or in the

common law." (Civ. Code, § 880.020, subd. (b).) Under the MRTA, holders of certain specified real property interests must record a notice of intent to preserve the interest within specified statutory time periods in order to prevent expiration of the interest. The real property interests subject to expiration unless notice of intent to preserve the interest is recorded under the MRTA are statutorily delineated: mortgages and deeds of trust (Civ. Code, §§ 882.020–882.040), mineral rights (Civ. Code, §§ 883.110–883.270), unexercised options (Civ. Code, §§ 884.010–884.030), powers of termination [the power to terminate a fee simple estate in real property to enforce a restriction on the use of the real property] (Civ. Code, §§ 885.010–885.070), unperformed contracts for the sale of real property (Civ. Code, §§ 886.010–886.050), and abandoned easements (Civ. Code, §§ 887.010–887.090).

Under the MRTA, record title may be cleared of an abandoned easement by bringing an action to establish abandonment under Civil Code section 887.040 and obtaining a judgment and court order in that action under Civil Code section 887.080. All of the following conditions must be satisfied for a period of 20 years immediately preceding commencement of the action to establish abandonment: "(1) The easement is not used at any time; [¶] (2) No separate property tax assessment is made of the easement or, if made, no taxes are paid on the assessment; [¶] (3) No instrument creating, reserving, transferring, or otherwise evidencing the easement is recorded." (Civ. Code, § 887.050.)[5]

An easement is not abandoned under the MRTA if the easement owner either (1) records a notice of intent to preserve the easement within 20 years preceding commencement of an action to establish

---

[5] The MRTA expressly excludes conservation easements from expiration under the statute (Civ. Code, § 880.240, subd. (d)), recognizing that such easements are perpetual in duration and therefore incapable of abandonment. (See Recommendation Relating to Marketable Title of Real Property (Nov. 1981) 16 Cal. Law Revision Com. Rep. 401 (1982); Civ. Code, § 815.2, subd. (b) ["A conservation easement shall be perpetual in duration"].)

abandonment; or (2) records a "late" notice of intent to preserve the easement after commencement of an action to establish abandonment and before judgment in the action is entered, upon payment into court of the property owner's litigation expenses attributable to the abandonment action. (Civ. Code, §§ 887.060, 887.070.)

Defendants did not assert an affirmative defense or a cross-claim for statutory abandonment of the easement under the MRTA, nor did they offer any evidence that the conditions for abandonment were satisfied. We find no error in the trial court's ruling that the MRTA did not apply.[6]

## 2. No extinguishment of easement by quitclaim provision

As discussed, the easement grant contains the following quitclaim provision: "Grantee agrees . . . to quitclaim said easement within one year from such time as it is possible for Grantee to connect to any sewer line extending along Pacific Coast Highway or Topanga Canyon Boulevard which serves its service station located at the intersection thereof." Defendants failed to offer any admissible evidence showing that any quitclaim obligation arose to extinguish the easement.

The undisputed evidence shows that no sewer line exists along PCH or Topanga Canyon Boulevard that serves the gas station property. Plaintiffs presented evidence that their predecessors and the County signed a 1967 recorded waiver and agreement in which the County agreed the gas station property could connect to the Malibu Vista sewer until a new sewer district was created. There was no

---

[6] We deny Defendants' request for judicial notice of a memorandum that is purportedly part of the legislative record of the MRTA. The trial court sustained objections to this evidence in its order granting Tesoro's motion for summary judgment, and Defendants did not challenge that evidentiary ruling in their opening appellate brief. (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 [failure to raise argument in the opening brief waives the issue on appeal].)

10

evidence that such a new sewer district was created or that a sewer line serving the gas station property existed.

Defendants' argument that it was "possible" for Plaintiffs to connect to "any sewer line" extending along PCH or Topanga Canyon Boulevard ignores other qualifying language in the quitclaim provision—that the sewer line must also be one "which serves [the] service station located at the intersection thereof." The undisputed evidence showed that no such sewer line exists.

Defendants cite the declaration of their expert, Quang Tran, as evidence that it was possible for Plaintiffs to connect to the gravity line sewer connection on PCH and Coastline Drive, located three quarters of a mile away from the gas station property. The trial court sustained Plaintiffs' objections to Tran's declaration in its entirety, however, as speculative, conclusory, factually unsupported, irrelevant, hearsay, an impermissible legal interpretation of a writing, and in violation of the best evidence rule.

Defendants fail to demonstrate any abuse of discretion by the trial court in excluding Tran's declaration. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.) The only argument Defendants raise on appeal is that under the rule requiring liberal construction of evidence offered to oppose a summary judgment motion, they were not obligated to present as detailed or extensive explanation of Tran's qualifications or the bases for his opinions as that required for expert testimony presented in support of summary judgment. Defendants fail to address each of the grounds for the trial court's ruling and to demonstrate how each was incorrect. They therefore fail to sustain their burden of demonstrating an abuse of discretion. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1075.)

**C. Motion for reconsideration**

Defendants fail to show any abuse of discretion by the trial court in denying their motion for reconsideration of the summary adjudication ruling. (*New York Times Co. v. Superior Court* (2005) 135

11

Cal.App.4th 206, 212 [ruling on motion for reconsideration reviewed for abuse of discretion].)

A motion for reconsideration may only be brought if the moving party can offer "new or different facts, circumstances, or law" which it could not, with reasonable diligence, have discovered and produced at the time of the prior motion. (Code Civ. Proc., § 1008, subd. (a); see *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1467.) A motion for reconsideration will be denied absent a strong showing of diligence. (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690.) Where evidence addressed in the motion for reconsideration was available to a party before the initial motion was heard, such evidence is not considered "new" evidence for purposes of a motion for reconsideration. (See *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1028.) In other words, the party seeking reconsideration must provide not only new evidence, but also a satisfactory explanation for failing to present that evidence earlier. (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342.) The statute is jurisdictional. (Code Civ. Proc., § 1008, subd. (e).) If the moving party does not present new or different facts, circumstances, or law, then the court lacks jurisdiction to entertain reconsideration. If the statutory requirements are not met, then the motion will be denied.

Defendants' motion for reconsideration presented the testimony of Bonneau Dickson, whose deposition they took after the trial court granted Plaintiffs' motion for summary adjudication. Defendants presented no satisfactory explanation for their failure to obtain and present this evidence earlier, in opposition to Plaintiffs' motion, or why they did not seek a continuance of the summary adjudication hearing so they could do so.

Dickson's testimony presented no new or different facts. That the Coastline station had been changed from a pump to a gravity system had already been established. Dickson's testimony that the change to a gravity system was a "significant improvement" does not establish that it was possible for the gas station property to connect to that system. When asked whether it would be possible to extend the gas station

12

property's sewer line down PCH, Dickson replied, "I would be speculating about that."

The trial court did not err by denying the motion for reconsideration.

## II. Equitable easement

A court may exercise its equity powers "to affirmatively fashion an interest in the owner's land which will protect the encroacher's use" by granting an equitable easement. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 764 (*Hirshfield*).) When deciding whether to grant an equitable easement, a court considers the following factors: (1) whether the encroachment was innocent, and not the result of a willful or negligent act; (2) whether the encroachment irreparably injures the owner of the encroached upon property; and (3) whether the hardship to the encroacher of enjoining the encroachment would be greatly disproportionate to the hardship caused to the encroached upon party by the continuing encroachment. (*Id.* at pp. 758–759.)

We review the trial court's exercise of its equity powers in granting an equitable easement under the abuse of discretion standard. (*Hirshfield, supra,* 91 Cal.App.4th at p. 755.) "Under that standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision ' "falls within the permissible range of options set by the legal criteria." ' " (*Id.* at p. 771.)

The record discloses no abuse of discretion. The trial court's statement of decision contains detailed factual findings on every element of an equitable easement. Defendants do not challenge the sufficiency of the evidence supporting those factual findings, and they show no misapplication of the law to the facts.

We reject Defendants' assertion that the trial court's ruling on the equitable easement claim was an advisory opinion only. The trial court did not state that its ruling was advisory, and the statement of decision and judgment contradict such an assertion. We also reject Defendants' request, unsupported by any legal authority, to dismiss the trial court's equitable easement grant as an "alternative finding."

13

## A. Innocence

Defendants fail to show that the trial court misapplied the law to the facts by concluding Plaintiffs acted innocently in their reliance on and use of the sewer easement. The trial court found the evidence sufficient to establish the first element of an equitable easement—that Plaintiffs' encroachment was innocent, not willful or negligent. Plaintiffs and their predecessors purchased and leased the gas station property with the reasonable belief that a valid recorded sewer easement existed. Defendants purchased the Malibu Vista property with actual and constructive notice of the recorded easement and never complained about the presence or actual use of the easement between 1997 and 2016.

The trial court properly considered Defendants' conduct in determining Plaintiffs' innocence and whether Defendants bore some responsibility for the parties' dispute. (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 265 [court should consider encroached upon property owner's conduct when deciding whether to grant an equitable easement].) Defendants themselves supervised work that resulted in the removal of a 20-foot section of the sewer pipe in the easement. When a sewage spill occurred where the pipe had been removed, Defendants refused to allow Plaintiffs to enter the Malibu Vista property to make repairs. Defendants thereafter attempted to build a concrete staircase over the easement, necessitating issuance of an injunction against them. The trial court did not err by determining that Plaintiffs acted innocently in relying on and using the easement.

## B. Irreparable injury and balancing of harms

The trial court applied the correct legal standard when considering the second and third factors relevant to an equitable easement determination—injury to the owner of the encroached upon property, and balancing the burdens borne by the encroaching and encroached upon parties. (See, e.g., *Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 21–22 (*Shoen*).) The trial court found that an equitable easement would cause Defendants no irreparable harm and included in its statement of decision the evidence supporting that finding.

14

Defendants do not challenge the sufficiency of the evidence supporting any of the trial court's factual findings.

The sewer pipe is located on the Malibu Vista property in a five-foot setback that generally cannot be improved with structures. Its presence does not affect the highest and best use of the property. Defendants presented no evidence showing any diminution in the value of their property by any more than a de minimis amount. No prior owner of the Malibu Vista property experienced any sewer leaks or expressed concerns about the presence of the sewer pipe. There was no evidence that the sewer pipe was substantially likely to break or leak in the future.

Against the relatively de minimis impact of the easement on Defendants' use and enjoyment of their property, the trial court weighed the burdens Plaintiffs would bear if no equitable easement were granted. Plaintiffs invested more than 10 years and $11 million in renovating the gas station property, reasonably believing that a valid sewer easement existed. After Defendants removed a portion of the sewer pipe, resulting in a sewage spill, Defendants refused to allow Plaintiffs to enter the Malibu Vista property to make the necessary repairs. Tesoro was then forced to truck sewage out of the gas station property at a cost of $10,000 per month and in violation of a County directive to reconnect to the Malibu Vista sewer.

The trial court found there was no feasible alternative to an equitable easement and set forth in detail the evidence supporting that finding. A septic tank is not feasible because groundwater levels at the gas station property are too high; the County would likely not approve an above ground septic system; and even if such a system were approved, its installation would cost millions of dollars and would substantially lower the value and use of the gas station property. A gravity sewer line from the gas station property to the Coastline station is not feasible because of insufficient continuous slope along the roadway and high groundwater levels at the site. Installation of any sewer line along PCH would involve a lengthy approval process, requiring environmental review, partial closure of PCH, and approvals

15

and permits from multiple government agencies. The record does not support Defendants' claim that the trial court "misapplied [the] rules of equity" in finding no reasonable alternative to the equitable easement.

We reject Defendants' contention that Plaintiffs bore the burden of showing the absence of feasible alternatives, and that the trial court improperly "reassign[ed] property rights" based solely on the cost of those alternatives. There was substantial evidence that Plaintiffs would suffer a greatly disproportionate hardship relative to any hardship Defendants would bear from its grant. (See *Shoen, supra,* 237 Cal.App.4th at p. 20.) The statement of decision reflects the trial court's balancing of the equities after comparing the relative burdens on the parties based on the evidence submitted. Defendants fail to establish any abuse of discretion in the trial court's equitable easement grant.

## III. Absence of court order in *Goodfriend* action

Before the trial on negligence and damages commenced, Defendants filed a motion to dismiss Plaintiffs' negligence claim, or alternatively, a motion in limine to exclude evidence of their negligence, arguing they could not be sued for negligence absent a court order in the *Goodfriend* action. Defendants argued below, as they do now, that they were appointed by the court in the *Goodfriend* action to serve as part of the "Receiver's Team" supervising remediation of debris deposited by Goodfriend. They claim they could not be sued for negligence in their supervisory capacities without leave from the *Goodfriend* court. The trial court denied Defendants' motions.

The trial court found that Defendants forfeited the *Goodfriend* receivership defense by failing to assert it "at the earliest opportunity." " '[A] plea in abatement such as lack of capacity to sue "must be raised by defendant at the earliest opportunity or it is waived. . . . The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer." ' " (*The Rossdale Group, LLC v. Walton* (2017) 12 Cal.App.5th 936, 943.) Defendants did not assert a receivership defense in their answer, demurrer, or any other pretrial document and so waived the defense. (*Ibid.*)

16

The trial court further found that even absent such waiver, the receivership defense had no merit. Defendants fail to establish any abuse of discretion. The record shows that a receiver was appointed to oversee remediation only on Goodfriend's property, not Defendants' property. Moreover, Defendants stipulated that the *Goodfriend* remediation work was limited to removing debris and contaminated soil. The scope of that work did not include removing a portion of the existing sewer line. No court order was required in the *Goodfriend* action for Plaintiffs to litigate their negligence claim against Defendants.

## IV. Alleged cumulative errors

Defendants fail to establish that any purported errors by the trial court, singly or cumulatively, require reversal of the jury verdict in the negligence trial.

### A. Alleged prejudicial effect of recorded and equitable easement rulings

Defendants contend that if the trial court's rulings on the recorded and equitable easements are reversed, the permanent injunction and the negligence verdict must also be reversed. Because we find no error in the trial court's adjudication of the easement claims, we need not address Defendants' argument for reversing the injunction or the jury verdict on that basis.

We reject Defendants' contention that the trial court erred by bifurcating the equitable easement and negligence claims and by instructing the jury trying the negligence claims that certain factual findings made in the equitable easement trial were undisputed and should be accepted as true. The record discloses no abuse of discretion. (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 353 [trial court's sequencing of bifurcated trial reviewed for abuse of discretion].) A trial court overseeing a combined action for equitable and legal claims may hold a bench trial on the equitable issues first. (*Connell v. Bowes* (1942) 19 Cal.2d 870, 872; *Alcoa Global,* at p. 352.) " '*[I]f* any legal issues remain [after the bench trial], a jury may be called.' [Citations.] Thus, while a plaintiff

17

retain[s] his jury trial right, the extent of the issues actually tried by jury could be impacted by the trial court's findings in equity. 'Where a "mixed bag" of legal and equitable claims is presented in a case, a court trial of the equitable claims first may obviate the necessity of a jury trial on the legal claims.' " (*Alcoa Global,* at p. 354.)

*Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399 (*Darbun*), cited by Defendants, acknowledges this "equity first" principle: " 'It is well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury [or with an advisory jury], and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury.' " (*Id.* at p. 411.)

*Darbun* is otherwise distinguishable. That case involved a single cause of action for breach of contract. The trial court in *Darbun* bifurcated the equitable issue of whether specific performance was available as a remedy and excluded evidence of breach, reserving that issue for the jury to decide. (*Darbun, supra,* 239 Cal.App.4th at p. 409.) The trial court then nevertheless proceeded to adjudicate the legal issue of breach. The appellate court in *Darbun* reversed, noting that the trial court had expressly limited the scope of the bench trial to exclude the issue of breach. The "equity first" rule accordingly did not apply, and the trial court's conclusion did not foreclose a jury determination on breach. (*Id.* at p. 411.)

The circumstances in *Darbun* are not present here. The trial court in this case properly determined the factual issues pertinent to the equitable easement claim and did not reserve any of those issues for the jury to decide in the negligence trial.

## B. Alleged instructional errors

Defendants contend the trial court erred by refusing to instruct the jury in the negligence trial that Fiedler was acting as a "responsible charge" with respect to sewer line connection issues, and that Plaintiffs were liable under agency theory for the alleged negligence of their contractor, RD Builders. Defendants further contend the trial court

18

erred by instructing the jury that factual findings made during the equitable easement trial were undisputed.

### 1. Proposed instruction as to Fiedler

The trial court did not err by denying Defendants' request for a special instruction that Fiedler acted as a "responsible charge" with respect to sewer connection issues.[7]  A party is entitled only to correct, nonargumentative instructions on theories supported by substantial evidence.  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).)  A court may properly refuse a proposed jury instruction that incorrectly states the applicable law (*Swanson v. The Marley-Wylain Co.* (2021) 65 Cal.App.5th 1007, 1020), that is confusing or misleading,

---

[7] The requested instruction incorporated the language of title 16, section 404.1 of the California Code of Regulations:  "The term 'responsible charge' directly relates to the extent of control a professional engineer is required to maintain while exercising independent control and direction of professional engineering services or creative work and to the engineering decisions which can be made only by a professional engineer:  [¶]  Engineering decisions which must be made by and are the responsibility of the engineer in responsible charge are those decisions concerning permanent or temporary projects which could create a hazard to life, health, property, or public welfare, and may include, but are not limited to:  [¶] — the selection of engineering alternatives to be investigated and the comparison of alternatives for the project.  [¶] — the decisions related to the preparation of engineering plans, specifications, calculations, reports, and other documents for the engineered works.  [¶] — the selection or development of techniques or methods of testing to be used in evaluating materials or completed projects, either new or existing. [¶] — the review and evaluation of construction methods or controls to be used and the evaluation of test results, materials, and workmanship insofar as they affect the character and integrity of the completed project. [¶] — the development and control of operating and maintenance procedures.  [¶]  In making and approving engineering decisions, the engineer shall be physically present or shall review and approve through the use of communication devices the engineering decisions prior to their implementation."

19

or that covers a legal point adequately covered by other instructions given.  (*Zannini v. Liker* (2022) 74 Cal.App.5th 610, 623.)

Defendants' proposed instruction was inapplicable and potentially confusing to the jury.  As the trial court noted, the proposed instruction discussed "approving engineering decisions," and there was no evidence that engineering decisions were a cause of the 2016 sewage spill.  Although the proposed instruction quoted from an administrative regulation, "verbatim quotations should not be used to instruct a jury if the wording, as applied, is confusing or seemingly inapplicable. ' "Instructions in the language of a statute [or regulation] should only be given ' "if the jury would have no difficulty in understanding the statute [and how it should be applied] without guidance from the court." ' " ' " (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1458–1459.)

Defendants' proposed instruction does not set forth the applicable standard of care.  The statutory provisions governing professional negligence for licensed engineers are set forth in Business and Professions Code section 6775, which authorizes the California Department of Consumer Affairs Board for Professional Engineers, Land Surveyors and Geologists to investigate and make findings as to whether any licensed engineer had displayed "negligence or incompetence in his or her practice."  (Bus. & Prof. Code, § 6775, subd. (c).)  "Negligence" as used in section 6775 is defined as "the failure of a licensee . . . to use the care ordinarily exercised in like cases by duly licensed professional engineers . . . in good standing."  (Cal. Code Regs., tit. 16, § 404, subd. (dd).)

The definition of negligence under Business and Professions Code section 6775 does not differ materially from that set forth in CACI Nos. 600 and 602, which the trial court gave to the jury in this case.  CACI No. 600 defines negligence as the "fail[ure] to use the skill and care that a reasonably careful civil engineer would have used in similar circumstances."  CACI No. 602 states:  "A civil engineer is not necessarily negligent just because their efforts are unsuccessful or they make an error that was reasonable under the circumstances.  A civil

20

engineer is negligent only if they were not as skillful, knowledgeable, or careful as other reasonable civil engineers would have been in similar circumstances." Those instructions adequately guided the jury on the standard of care applicable to Fiedler.

Defendants fail, moreover, to demonstrate prejudice resulting from the alleged instructional error. "[I]nstructional error requires reversal only ' "where it seems probable" that the error "prejudicially affected the verdict." ' " (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 983.) A reviewing court should consider the nature of the error, "including its natural and probable effect on a party's ability to place his full case before the jury," and the likelihood of actual prejudice as reflected in the trial record, taking into account "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule, supra,* 8 Cal.4th at pp. 580–581.)

That three of the twelve jurors voted in favor of finding Fiedler negligent is insufficient to demonstrate a reasonable probability that Defendants would have obtained a more favorable result had the proposed instruction been given. *Wank v. Richman & Garrett* (1985) 165 Cal.App.3d 1103 and *National Medical Transport Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, which Defendants cite as support for their position, are inapposite or distinguishable. The court in *Wank* held that a party is entitled to a jury instruction that (1) is supported by the evidence, (2) is in accord with applicable law, and (3) supports a theory advanced by that party. (*Wank,* at p. 1108.) Neither of the first two conditions were satisfied in this case. *National Medical* involved an erroneously given jury instruction that failed to set forth the relevant factors governing an auditor's obligations to a client before resigning from a representation. (*National Medical,* at pp. 429–431.) Because of this deficiency, the jury did not receive sufficient guidance as to whether the defendant auditor's resignation was permissible under professional standards. (*Id.* at p. 429.) Those circumstances are not present here.

21

## 2. Agency instructions as to RD Builders

Defendants waived any argument that the jury should have been instructed pursuant to CACI No. 3700[8] concerning Plaintiffs' liability for alleged negligence by their contractor, RD Builders, in failing to test the sewer line. To support such an instruction, the evidence would have had to show that Plaintiffs hired RD Builders to perform inherently dangerous work; Plaintiffs retained control over safety conditions at the site; and Plaintiffs' retention of control affirmatively contributed to the complained of injury. (*Soule, supra,* 8 Cal.4th at p. 572 [jury instructions must be based on theories supported by substantial evidence]; see *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 201, 213 (*Hooker*) [elements necessary to show liability of a hirer of an independent contractor]; *Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 (*Privette*) [one who hires an independent contractor is generally not liable to third parties for injuries caused by contractor's negligence].)

The record shows that when Defendants requested agency instructions concerning Plaintiffs' liability for alleged negligence by RD Builders, the trial court directed Defendants to proffer evidence that Tesoro or Thrifty directed the work of RD Builders under the standards set forth in *Privette* and *Hooker*. Defendants provided excerpts from the trial testimony of RD Builders's principal, Ken Redfern. The trial court reviewed the proffered testimony and stated, "I don't see anywhere here that states—that RD Builders was directed by the Plaintiff." Plaintiffs then provided the court with Redfern's testimony that no one at Thrifty or Tesoro had directed RD Builders to test the sewer line, and that RD Builders had only performed the work specified in its contract. The trial court then stated its tentative ruling to deny

---

[8] CACI No. 3700 states: "One may authorize another to act on one's behalf in transactions with third persons. This relationship is called 'agency.' The company giving the authority is called the 'principal'; the person to whom authority is given is called the 'agent.' A principal is responsible for harm caused by the wrongful conduct of its agent while acting within the scope of their authority."

22

Defendants' requested agency instructions "unless you show me something that convinces me otherwise." Defendants provide no citation to the record indicating that they made any further proffer in response to the trial court's directive.

### 3. Special instruction as to undisputed facts

For reasons previously discussed in part IV.A of this opinion, the trial court did not err by instructing the jury that factual findings made by the court during the equitable easement trial were undisputed and should be accepted as true by the jury trying the negligence claims.

## C. Interference with easement

Defendants concede that Plaintiffs did not assert a cause of action for interference with easement, that the trial court denied Plaintiffs' request to amend the complaint to include such a claim after the close of evidence, and that the jury was never instructed or asked to render a verdict on interference with easement. Defendants nevertheless argue the jury improperly based its negligence verdict on evidence that Defendants interfered with Plaintiffs' easement rights by denying them access to repair or replace the sewer pipe. Defendants further argue they were improperly denied the opportunity to present evidence that their refusal to allow access was reasonable. We reject these arguments for reasons we discuss below.

After the trial court denied Plaintiffs' request to amend their complaint to include a separate interference with easement cause of action, Defendants' refusal to allow sewer repairs was again discussed during a court conference on proposed jury instructions. Defendants objected to language in Plaintiffs' proposed jury instruction on negligence that referred to Defendants' failure to allow the sewer pipe to be repaired or reconnected. The trial court advised Plaintiffs that if they intended to argue interference with easement as part of their negligence claim, the court would reopen evidence to allow Defendants to present evidence showing their refusal to allow access was reasonable. Plaintiffs' counsel then agreed not to argue that Defendants' refusal to allow repairs was negligent. Counsel noted, however, that Defendants' refusal was relevant to Plaintiffs' claim for

23

continuing damages. Based on Plaintiffs' counsel's agreement, the trial court struck from the proposed negligence instruction language stating that Defendants failed to use reasonable care by not allowing the sewer pipe to be repaired. The trial court then clarified that Defendants' refusal to allow repairs was relevant to the issue of causation and that Plaintiffs could make that argument to the jury.

Plaintiffs' closing argument did not exceed the bounds of the trial court's ruling. Tesoro's counsel argued in closing that Defendants refusal to allow repair or replacement of the pipe had "everything to do with [its] claim" for damages.[9] When Tesoro's' counsel again referred to Defendants' refusal to allow repairs after they knew the sewer pipe had been removed, Defendants' counsel made a "standing objection to this line of argument" because Plaintiffs had not asserted a separate claim "for any damages pertaining to failure to allow replacement and removal." The trial court overruled the objection, noting that the argument "goes to causation." The trial court also denied Defendants' request to instruct the jury not to consider "the alleged failure to allow repair or replacement of the sewer pipe on Defendants' property as part of your consideration of Tesoro's case on negligence."

Defendants fail to demonstrate any abuse of discretion by the trial court. Tesoro's counsel did not argue that Defendants' refusal to allow repair or replacement of the sewer pipe constituted negligence or wrongful interference with the easement. Counsel's argument was consistent with Tesoro's negligence theory—that Defendants' removal of the sewer pipe from the Malibu Vista property constituted

---

[9] In their appellate brief, Defendants misleadingly omit language from counsel's closing argument. The omitted language makes clear that Tesoro's counsel argued that Defendants' refusal to allow repair or replacement of the sewer pipe was relevant to Tesoro's damages claim. Counsel did not argue Defendants' refusal to allow repairs was negligent. Tesoro's counsel's statement, in its entirety is as follows: "[Defendants' counsel] told you that the fact they did not allow the repair or replacement of the pipe—she used these words—not part of any damages in this case. I respectfully disagree. It has, in my opinion, everything to do with our claim."

24

negligence. The record shows that counsel's argument focused on evidence that Defendants knew the sewer easement existed, that Defendants oversaw work that resulted in removal of a 20-foot section of the sewer pipe on their property, that removal of the sewer pipe could not have been accidental, and that Defendants never informed Plaintiffs of the removal. Plaintiffs could and did properly argue that Defendants' refusal to allow repair or replacement of the pipe forced them to incur continuing damages of $120,000 per year for the cost of trucking sewage out of the gas station. Tesoro's counsel's statements were within the "wide latitude" afforded to counsel to argue his view of the evidence and the conclusions to be drawn therefrom. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795.)

The trial court, moreover, properly instructed the jury on the elements of negligence and on Tesoro's burden to prove its negligence claim. We presume the jury followed those instructions.[10] (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1223.) The record shows no abuse of discretion.

## D. Alleged evidentiary errors

### 1. Purported exclusion of four-inch pipe

Defendants contend the trial court erroneously excluded from evidence a four-inch piece of sewer pipe cut by their plumber after the 2016 sewage spill occurred. The record shows, however, that the trial court did not preclude Defendants from using the pipe but "reserve[d] judgment" on the issue. Defendants did not subsequently seek to introduce the pipe into evidence.

The trial court did grant Plaintiffs' motion in limine to preclude evidence that sewage had been dumped onto the Malibu Vista property for decades, or that the sewage spill occurred because of earth

---

[10] We disregard juror declarations Defendants cite as support for their claim that the jury improperly based its negligence finding on interference with easement. The trial court sustained objections to those declarations, offered below in support of Defendants' motion for a new trial, and Defendants do not challenge that evidentiary ruling in this appeal.

movement, rotting, or failure to maintain the pipe. Defendants do not challenge those rulings, which were consistent with the parties' stipulation that "[n]either earth movement nor rotting of the pipe was the cause for the removal of [the] portion of the sewer pipe" from Defendants' property in 2012. That stipulation forecloses Defendants' argument that they should have been allowed to introduce the four-inch pipe into evidence to show "that the pipe was old rusty, and never maintained" so the jury could determine "the cause of and responsibility for the [sewage] spill." Defendants demonstrate no evidentiary error by the trial court.

## 2. Photographic evidence

The trial court did not abuse its discretion by excluding photographs purportedly taken in 1999 of the hillside adjacent to the gas station property. As discussed, the trial court found in the equitable easement trial that neither earth movement nor rotting of the pipe was the cause for removing a 20-foot section of sewer pipe from Defendants' property in 2012. Defendants fail to demonstrate why photographs depicting the condition of the hillside 13 years previously were relevant to their negligence claim against Plaintiffs with respect to the 2016 sewage spill.

### E. Attorney misconduct

We reject Defendants' contentions that alleged misconduct by counsel for Fiedler and Tesoro requires reversal of the jury verdict.

## 1. Applicable law and standard of review

Attorney misconduct is a ground for a new trial. (Code Civ. Proc., § 657, subd. (l).) "But it is not enough for a party to show attorney misconduct. In order to justify a new trial, the party must demonstrate that the misconduct was prejudicial." (*Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 149 (*Garcia*).) An appellate court makes an independent determination as to whether misconduct occurred and whether it is reasonably probable that the appellant would have achieved a more favorable result in the absence of the misconduct. In doing so, the reviewing court examines the record as a whole, taking into account the nature and seriousness of the attorney conduct, the

26

general atmosphere, including the judge's control of the trial, and the efficacy of objection or admonition under all the circumstances.  (*Ibid.*)

## 2.  Alleged misconduct by Fiedler's counsel
### a.  Relevant factual background

While cross-examining Los Angeles County inspector Ron Dockery, a witness called by Defendants, Fiedler's counsel asked whether Dockery had experienced "a prior run-in" with Defendants. After Defendants objected, the trial court held an in-chambers conference with the parties.  Fiedler's counsel argued he was entitled to show Dockery was biased because Dockery was afraid of Defendants, who had sued him personally.  The trial court limited this line of questioning and ruled that counsel could direct Dockery to respond only with a yes or no answer:

"THE COURT:  . . . So this is what I want you to do.  You can say—do you have any fear of [Defendants' counsel] that would—that's causing you to give the testimony that you give today?  That's all.  If he says yes, he says yes.  If he says no, he says no."  The trial court clarified that, depending on Dockery's response, Fiedler's counsel could seek to impeach him by asking whether he was afraid of Defendants because he believed they were litigious.

Before Fiedler's cross-examination of Dockery resumed the following day, the trial court held a further conference with counsel outside the presence of the jury.  During the conference, the trial court reiterated the limitations the court had imposed on questioning Dockery:

"THE COURT:  . . . I don't want you to bring up litigation and all that litigious past.  Okay?"

When Dockery took the stand, Fiedler's counsel asked him, without objection, whether he had been sued personally by Defendants. Dockery responded "yes."

Fiedler's counsel then questioned Dockery about a conversation he had with RD Builders while conducting an inspection of the sewer pipe.  The following exchange occurred:

27

"Q    And in fact, when you were doing this inspection, you warned the R.D. folks to watch their P's and Q's, didn't you?

"A    Yes, I did.

"Q    And that was because of why?

"[DEFENDANTS' COUNSEL]:  Objection, your honor, that's overbroad.

"THE COURT:  Lead him, please.

"Q    BY [FIEDLER'S COUNSEL]:  Well, the reason you did that was because you felt [Defendants] were sue happy; right?

"[DEFENDANTS' COUNSEL]:  Objection, your honor.  That is argumentative."

….

"THE COURT:  Counsel, rephrase your question, please.

"Q    [BY FIEDLER'S COUNSEL]:  Are you familiar with the term 'Litigious'?

"MS. ROIT:  Objection, your honor.

"THE COURT:  No.  I—I—Counsel.

"Q [BY FIEDLER'S COUNSEL]:  Why—Why did you tell R.D. to mind their P's and Q's?

"MS. ROIT:  Objection, your honor.  It goes beyond—

"THE COURT:  I asked that you lead the witness.

"THE WITNESS:  Is it okay to answer?

"BY [FIEDLER'S COUNSEL]:  No."

….

"Q    You told R.D. to watch their P's and Q's because you were concerned that [Defendants] might sue somebody if . . . there was a problem—

"[DEFENDANTS' COUNSEL]:  Objection—

"Q    Is that true?

"[DEFENDANTS' COUNSEL]:  Objection, your honor.  Argumentative.  It goes beyond—

"THE COURT:  Overruled."

….

28

"A    Okay.  I said that because, basically, I didn't want to [have] any trouble—

"THE COURT:  Okay.  I—It calls for a yes-or-a-no answer.

"THE WITNESS:  —with the gas station job, and I didn't think they needed to be disturbed.  Everything on my plan, the approved plan, showed that the sewer line that went through their property was a pre-existing sewer.  And so I just assumed—you know, they signed an agreement during the plan check that the existing sewer line was in— or had been maintained.  And so my reasoning for saying things of that nature is to keep the peace."

Later, outside the presence of the jury, the trial court admonished Fiedler's counsel that he had not abided by the court's order not to use the word "litigious."  The trial court denied Defendants' oral request for a mistrial, however, based on Fiedler's counsel's conduct:  "There is no mistrial from this.  Quite frankly, if my ruling had been otherwise, it probably would have also been okay.  This is one of those discretionary call[s] that I—I did it out of an abundance of caution."  The trial court explained that Dockery's responses had "open[ed] the door" to counsel's question as to whether Dockery had told RD Builders to "watch their P's and Q's" because he was concerned Defendants might sue someone if a problem arose.  The court pointed out, however, that Dockery's answer to that question had not referred to Defendants as litigious.

### b.  No prejudice

Our review of the record leads us to conclude that it is not reasonably probable Defendants would have achieved a more favorable result absent the alleged misconduct by Fiedler's counsel.  The conduct at issue occurred during a brief, isolated portion of Dockery's cross-examination.  Dockery did not respond to counsel's questions by stating that he believed Defendants were litigious or that he was afraid of them for that reason.

The likelihood of prejudice was minimal given that Dockery had previously testified, without objection, that Defendants had sued him individually, in a separate lawsuit, and that they blamed him for

29

performing an improper inspection. Defendants' proclivity toward litigation was also the subject of prior, unobjected to testimony by Tesoro witness Ron Rogers, who said that Defendant Roit had told him "that she was a lawyer and that they would not let that happen and they would tie us up in court for ten years."

That the jury voted 9 to 3 in Fiedler's favor on Defendants' negligence cause of action is insufficient to establish prejudice given the circumstances discussed above. The record, moreover, contains substantial evidence of Defendants' negligence as the cause of the sewage spill and the resulting damages incurred by Tesoro. Our review of the record leads us to conclude that no prejudicial misconduct occurred.

### 3. Alleged misconduct by Tesoro's counsel

We reject Defendants' contention that Tesoro's counsel engaged in prejudicial misconduct by displaying to the jury during closing argument a demonstrative exhibit summarizing $423,375.38 in invoices Tesoro paid to Top Notch to truck sewage out of the gas station property and by arguing to the jury that the invoices themselves had not been admitted into evidence because they were voluminous, and by arguing that Defendants had interfered with the easement.

### a. Relevant factual background

Ron Rogers testified at trial that Tesoro hired Top Notch to truck sewage from the gas station property after Defendants refused to allow sewer pipe repairs, that Top Notch billed Tesoro $423,375.38 to do so, and that those bills were paid. Rogers identified several exhibits, including exhibit 435A (a Top Notch invoice), and exhibit 1538 (a compilation of Top Notch invoices showing invoice dates, dates of service and invoice amounts totaling $423,375.58) which were displayed for the jury without objection during Rogers's testimony. Rogers further testified that some Top Notch invoices were directed to an entity named Speedway, a Tesoro affiliate. Rogers testified that he did not know which entity, Speedway or Tesoro, paid the invoices, but that he was certain all the invoices were paid.

30

During closing argument, Tesoro's counsel summarized Rogers's testimony that Top Notch billed Tesoro $423,375.88 to remove sewage from the gas station property, and that the invoices had been paid. Counsel then told the jury, "We didn't give you all the invoices, there are—there's a thick stack—" Defendants' counsel objected to characterizing the invoices as "a thick stack." The trial court overruled the objection and instructed the jury that they were "the best judge of what the testimony was. If you believe there's any misstatement of evidence, you can always ask the reporter to read back."

Defendants during closing argument urged the jury to reject Tesoro's damages claim because it was unsupported by invoices, checks, or any other documentary evidence. Defendants further argued that Rogers had simply confirmed the total sum paid to Top Notch but could not identify the entity that had paid the Top Notch invoices.

Tesoro's counsel argued in rebuttal that there had been ample testimonial evidence of Top Notch invoices during the trial. He then displayed for the jury exhibit 435A, to which Defendants' counsel objected as "not in evidence." Tesoro's counsel responded that exhibit 435A was a demonstrative exhibit previously shown to the jury. The trial court ruled, "If it was shown, he can use it. It doesn't go into evidence."

Tesoro's counsel next displayed for the jury, without objection, exhibit 435, a Top Notch invoice for trucking sewage from the gas station property and pointed out that Rogers testified that he had reviewed that invoice and "quite a few" others. Counsel argued, without objection: "There was evidence, under oath. And, yes, it's true . . . . [Tesoro's counsel] did not spend a half an hour of your time to go through a zillion more invoices . . . . Thank goodness because otherwise we'd still be here next August."

#### b. No prejudicial misconduct

Tesoro's counsel did not engage in prejudicial misconduct by displaying an unadmitted demonstrative exhibit to the jury during closing argument. The record shows the exhibit had previously been displayed to the jury, without objection, during Rogers's trial

testimony. The trial court permitted counsel to display that exhibit to the jury again during closing argument, as it was within the court's discretion to do so. (See *People v. Peoples* (2016) 62 Cal.4th 718, 784–785.)

Tesoro's counsel did not engage in misconduct by describing the unadmitted Top Notch invoices as "a thick stack." When conducting closing argument, attorneys have "wide latitude" to discuss and summarize the case. (*Garcia, supra,* 204 Cal.App.4th at p. 147.) The adverse party cannot complain of faulty reasoning or illogical deductions, "as such matters are ultimately for the consideration of the jury." (*Id.* at pp. 147–148.) In response to Defendants' objection to counsel's characterization of the invoices as "a thick stack," the trial court instructed the jury that they were the best judge of the testimony and the evidence. The record does not support Defendants' claims of attorney misconduct or any prejudicial impact resulting therefrom.[11]

---

[11] Defendants argue the purported prejudicial impact of the alleged misconduct was "further compounded" because the verdict form did not give the jury the option of finding no damages. Defendants waived this argument by failing to object to the verdict form on that basis. Although Defendants claim they raised such an objection below, the record contradicts that claim.

**DISPOSITION**

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


                                    LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.